**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KATE RICKETTS**, et al., | : | |
| Plaintiffs, | : | Civil Action No. 2:24-cv-00577 |
| v. | : | **AMENDED COMPLAINT** |
| **RYAN R. BLACK**, et al., | : | **JUDGE MICHAEL H. WATSON** |
| Defendants. | : | **Magistrate Judge Chelsey M. Vascura** |

**AMENDED COMPLAINT**

**(Jury Demand Endorsed Hereon)**

Plaintiffs Kelsey Vanscyoc and Kate Ricketts ("Plaintiffs"), by and through undersigned Counsel, bring the following Complaint alleging violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 216(b), the First and Fourteenth Amendments to the United States Constitution through the Reconstruction Era Civil Rights Act, codified at 42 U.S.C. Sec. 1983; Title VII of the Civil Rights Act of 1991, 42 U.S.C. Sec. 2000e, Ohio's Fair Minimum Wage Act, R.C. Chapter 4111 and Ohio's antidiscrimination law, R.C. Chapter 4112, against Defendants, Ryan R. Black, Hocking County Prosecutor, in both his official and individual capacities, and the Hocking County, Ohio ("Defendants").

**Introduction**

The action is filed against Defendants, Ryan Black, Hocking County Prosecutor, and the Hocking County, Ohio, alleging that the Plaintiff, Kelsey Vanscyoc**,** a female victims advocate, and Plaintiff, Kate Ricketts, a female victims advocate clerk, and seeks back pay and fringe benefits; compensatory and punitive damages; declaratory, injunctive, and equitable relief; prejudgment and postjudgment interest; attorneys' fees; and costs for Defendants' violations of the First and Fourteenth Amendments committed when, after

**1**

Plaintiffs expressed opinions on matters of public concern and complained of egregious discrimination and harassment on account of their gender, they were forced to resign from their positions because of the aforementioned exercise of constitutional and statutory rights. Not only did Plaintiffs complain of and challenged Defendant Black's constant stream of intimidation, belittlement and degrading behavior towards them on account of their gender. Plaintiff Vanscyoc was pursued by Defendant Black in the Summer of 2022, over a six (6) week period for sexual favors, using the power and influence of his position to induce her to enter into an allegedly consensual relations with him on two occasions, and asserts that any alleged "consent" was unlawfully obtained through Defendant Black's position and the inherent authority he exercised over Plaintiff Vanscyoc. When Vanscyoc opposed and reported unethical and discriminatory practices she suffered and/or discovered, Prosecutor Black (aided by and working in concert with Investigator Olen Martin) orchestrated a vindictive and retaliatory campaign to drive her out of her position, creating such intolerable conditions that there was no other option but resignation. The unlawful practices Vanscyoc opposed were matters of public concern that included Black's discriminatory employment practices; his potential ethical violations of inducing her to engage in sexual relations when she was in an intoxicated, demoralized state; his failure to comply with Hocking County personnel policies; and the retaliation Vanscyoc and co-worker, Kate Ricketts, suffered for complaining about discrimination. Plaintiffs believe their careers and reputations as government employees and victim advocates staff in Hocking County, Ohio have been destroyed by Mr. Black. Plaintiffs believe that any victims they may counsel and/or advocate for in the future may question whether such victims will trust or rely upon them for assistance or that any attorneys, judicial officers or law enforcement personnel will have confidence in them because of the conduct of Mr. Black.

Upon personal information and belief, now come the Plaintiffs, Kate Ricketts and Kelsey Vanscyoc, by and through the undersigned counsel and for her Complaint against Defendants, Hocking County, Ohio and Ryan R. Black, in their official and/or individual capacities (hereinafter referred to as "Defendants"), and state as follows:

## I.      Jurisdiction and Venue

1.      This is an action under 42 U.S.C. Sec. 1983 for damages arising out Defendants' violations of Plaintiffs' Constitutional rights and their constructive discharge from employment with the Hocking County Prosecuting Attorney's Office. Under 28 U.S.C. Secs. 1331, 1343, and 2201, Plaintiffs assert jurisdiction over federal claims under 29 U.S.C. Sec. 216 and 42 U.S.C. Sec. 1983, which provide for attorney and expert fees. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. Sec. 1367.

2.      Declaratory, equitable, and injunctive relief is sought pursuant to sought pursuant to 28 U.S.C. Secs. 2201; 2202.

3.      Compensatory against Defendants, and, against Defendant Black, punitive damages may be awarded 42 U.S.C. Sec. 1983; and liquidated damages may be awarded under 29 U.S.C. Sec. 216(b).

4.      Costs and attorneys' fees may be awarded pursuant to 29 U.S.C. Sec. 216(b), 42 U.S.C. §1988 and Fed. R. Civ. P. 54 and under Ohio state statutory and common law.

5.      Venue lies in this forum pursuant to 28 U.S.C. §1391(b) and S.D. Civ. R. 82.1 because the claim arose in Hocking County, Ohio, where at all times material to this Complaint Defendants located their headquarters and made employment decisions.

## II.      Parties

6.      Plaintiffs, Kate Ricketts ("Plaintiff Ricketts") and Kelsey Vanscyoc

("Plaintiff Vanscyoc") are U.S. citizens and residents of Hocking County, Ohio, and were employees as defined in 29 U.S.C. Sec. 203(e)(1) and R.C. Sec. 4112.01(A)(3) at all times material herein.

7.      Defendant Hocking County, Ohio ("Defendant Hocking County" or "County") is a political subdivision of the State of Ohio pursuant to Chapter 2744, Ohio Revised Code; funds and uses as a law enforcement entity the Hocking County Prosecutor's Office, which, at all times material to this action, employed Plaintiffs until their constructive discharge; left to the Hocking County Prosecutor the creation and adoption of its employment policies for that Office; is a "person" under 42 U.S.C. Sec. 1983, an "employer" under 29 U.S.C. Sec. 203(d) and R.C. Sec. 4112.01(A)(2), and acted under color of law.

8.      Defendant Ryan R. Black ("Defendant Black") is a "person" under 42 U.S.C. Sec. 1983, an "employer" under 29 U.S.C. Sec. 203(d) and R.C. Sec. 4112.01(A)(2) and acted under color of law; he establishes employment policies for the Hocking County Prosecutor's Office and on behalf of Defendant County its employment policies for that Office; personally decided to constructively terminate Plaintiffs after they expressed their opinion on matters of public concern; Defendant terminated Plaintiffs because of the opinions and complaints they expressed, and because they refused to acquiesce and/or engage in or consent to the unwelcome advances of a sexual nature, even though their beliefs and protected activities were not appropriate factors in measuring their ability to competently and loyally perform their job duties for him in their low-level positions where they had performed job duties without discretion of any political significance.

9.      Defendant Hocking County funds the Hocking County Prosecuting

**4**

Attorney's Office with its principal office located in Logan, Ohio.

### III. CLAIMS/CAUSES OF ACTION

### FACTUAL BACKGROUND

10. Plaintiffs reallege the foregoing paragraphs as if fully rewritten herein.

11. Plaintiffs Vanscyoc and Ricketts are members of a protected class, female, and were excellent employees of the Hocking County Prosecuting Attorney's Office, garnering positive comments about their job performance from court and law enforcement personnel as well as victims and colleagues.

12. On April 15, 2021 Plaintiff Vanscyoc was hired by Defendants, and was the Lead Victim Advocate/Director, Victim Service (a classified employee) from her hiring until her retaliatory demotion on March 22, 2023, which stripped her of her supervisory and Felony Court duties. (She was subsequently constructive discharged, effective March 31, 2023). In her lead victim advocate role, Ms. Vanscyoc was responsible for various aspects of the victim advocate program for the Hocking County Prosecuting Attorney's Office, interviewing, assisting and counseling crime victims, advising victims of certain rights, including the right to be present and heard at all court proceedings, receive notice of release of the offender, and offer input on plea deal, advising victims of the right to refuse discovery, their right to a prompt conclusion of their case and the right to restitution.

13. On February 2022 Plaintiff Ricketts was hired by Defendants as an Office Assistant (a classified employee) for the Hocking County Prosecutor's Office, in which she performed administrative support duties for the assistant prosecutors and victim advocates relating to victims of crime. (She was subsequently constructively discharged, effective April 11, 2023, because of the hostility, anger, and chaos of the discriminatory work environment created by Defendant Black).

5

14.     Defendant Black hired plaintiffs, supervised them, and was responsible for conducting performance evaluations for them, and all similarly situated employees in the office of the Hocking County Prosecuting Attorney; Black was also responsible for establishing Plaintiffs' compensation and pay, as well as administering various human-resources functions, such as maintaining personnel records, overseeing leave processes, and acting as the liaison for employee-benefits coordination and injury-reporting between the Hocking County Prosecuting Attorney's office and the Hocking County Commissioners.

## COUNT I
## FAILURE TO PAY OVERTIME
## (29 U.S.C. Sec. 216(b) and O.R.C. Sec. 4111.10)

15.     Plaintiffs reallege the foregoing paragraphs as if fully rewritten herein.

16.     The Ohio Attorney General's Office administers the State of Ohio's Victims Assistance Act (SVAA) and the federal Victims of Crime Act (VOCA) grant programs on a non-partisan basis.

17.     Funding under the State of Ohio's Victim Assistance Act is specifically limited in amount and purpose to certain expenses and activities.

18.     The Victim Advocate staff in each County Prosecutor's Office is responsible for distributing funds to victims of crime, assisting the victims, and preparing reports to the Ohio Attorney General's Office on those distributions.

19.     Funds are also available for the Victim Advocate staff in each County Prosecutor's Office upon application through the Ohio Office of Criminal Justice Services under the Violence Against Women Act Grants Program pursuant to federal law.

20.     The Victim Advocates staff has only ministerial discretion in writing the annual grant proposal, distributing the funds, assisting the victims, and preparing the required reports under the direction of the Hocking County Prosecutor.

21.     The Ohio Attorney General's Office awards crime victims compensation and grants through the Crime Victims Reparations fund pursuant to R.C. Sec. 2743.191(A), including, but not limited to, the compensation of any personnel needed to administer sections 2743.51 to 2743.72 of the Revised Code.

22.     Plaintiffs performed victim advocate services in the Prosecutor's office in an excellent manner and were never disciplined, and were eligible employees to be paid for overtime compensation.

23.     At all times material herein, the Plaintiffs were entitled to the rights, protection and benefits provided under the Fair Labor Standards Act, as amended, 29 U.S.C. Sec. 201, et seq., (hereinafter referred to as "FLSA"), including the right to be paid for services performed at the minimum wage as well as the right to receive overtime compensation from Defendants.

24.     At all times material herein, the Plaintiffs performed services for the benefit of the Defendants and were not paid for all hours worked, as well as for hours worked in excess of the hourly levels specified in the FLSA, 29 U.S.C. Sec. 207. Defendants failed to pay Plaintiffs for overtime hours they had accrued during their employment. As a result, at all times material herein, Plaintiffs have been entitled to be paid a minimum wage for the hours they worked and/or overtime compensation at a rate of not less than one and one-half times his regular rate of pay for the hours of overtime he has worked.

25.     Throughout Plaintiffs' employment, Defendants and/or their agents unilaterally imposed on the Plaintiffs, conditions under which they do not receive compensation for regular and/or overtime hours worked, willfully violating the FLSA and the applicable regulations of the Department of Labor, and deprived the Plaintiffs of the rights, protections and entitlements granted to them under this federal statute and the

pertinent regulations.

26.     Plaintiffs are required in the capacity in the aforementioned jobs, to perform services related to their positions, which require that they perform work according to the duties of the job being worked on in a forty (40) hour week.

27.     Defendants and/or its agents have subsequently, willfully refused to pay Plaintiffs any compensation owed them, despite their submission of information and time records reflecting time worked to Defendants, and reflecting hours worked in excess of forty (40) hours per week.

28.     As a result of the Defendants' violations of the FLSA and the applicable regulations of the U.S. Department of Labor, there has become due and owing to the Plaintiffs an amount of minimum wage and/or overtime pay under the FLSA. Based on the employment and work records for Plaintiffs, Plaintiffs state, at this time that the amounts owed to them for unpaid overtime cannot be completely ascertained with certainty.

29.     The Defendants are under a duty imposed by the FLSA, 29 U.S.C. Sec. 211(c), and the regulations of the U.S. Department of Labor to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amount of Defendants' liability can be ascertained. The Defendants, however, have failed to produce payroll and/or personnel records, which would reflect the amount of time worked by Plaintiffs during their employment. Therefore, the Plaintiffs respectfully request that the Court retain jurisdiction over the claims for this period and direct the Defendants to produce the aforementioned records, or, in the alternative, grant the Plaintiffs leave to file an additional supplemental complaint for said compensation.

30.     Plaintiff has complained to Defendant and/or his agents about their failure to pay wages due and/or overtime compensation.

8

31.     Defendants are liable to Plaintiffs for unpaid overtime compensation in an amount to be determined at trial.

32.     Defendants failed to maintain accurate records of Plaintiffs' time worked and failed to pay overtime.

33.     Plaintiffs Vanscyoc and Ricketts worked in excess of 40 hours per week without additional compensation on numerous occasions during their employment.

34.     Defendant Black and Hocking County were aware and on notice of Plaintiffs' work in excess of 40 hours per week and set forth above.

35.     Plaintiffs Vanscyoc and Ricketts are entitled to be paid at one and a half times their regular hourly wage rate for all hours worked in excess of 40 hours per week.

36.     Plaintiffs are entitled to judgment under 29 U.S.C. Sec. 29 U.S.C. Sec. 216(b) and R.C. Sec. 4111.10 in an amount be determined at trial.

## COUNT II
## 42 U.S. SEC. 1983 AND VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS

37.     Plaintiffs reallege the foregoing paragraphs as if fully rewritten herein.

38.     Plaintiffs occupied positions in the Hocking County Prosecutor's office, which were in the classified civil service under O.R.C. Chapter 124 and Article XV, Sec. 10 of the Ohio Constitution.

39.     Plaintiffs' classified civil service positions constituted a property interest within the meaning of the Ohio Constitution, Article I, Sec. 16, and United States Constitutions, 5th and 14th Amendments.

40.     By virtue of their constitutionally-protected property rights in their classified civil service positions, Plaintiffs were entitled to pre-deprivation due process.

41.     By terminating Plaintiffs at least in part due to their expressions of opinion

9

on matters of public concern and complaints of intimidation and hostile work environment and other inappropriate actions by Defendant Black, Defendants violated their rights under the First and Fourteenth Amendments, including, but not limited to, their property and reputational interests in their classified civil service employment.

42.     Defendant Black, by his constant intimidation, bullying, screaming at employees and throwing objects in the office when he appeared for work or shouting and screaming at employees in public, created an intolerably hostile and abusive work environment for Plaintiffs, who were both emotionally traumatized to the point they sought psychological counseling and treatment.

43.     Defendant Black, as the chief administrative officer for the Hocking County Prosecutor's office, would have been able to supervise the job performance by each Plaintiff to ensure that she competently performed their job duties in the same way they had historically done.

44.      Defendant Black lacked sufficient observation of the way each Plaintiff performed her job duties to form an opinion about whether they competently performed them or was likely to do so in his administration.

45.     Defendant Black had neither knowledge nor suspicion that any Plaintiff had failed to competently perform her job duties in the Prosecutor's Office or would be unlikely to do so in his administration.

46.     As a proximate result of Defendants' actions and inactions, each Plaintiff suffered so much emotional distress, anguish, frustration, and humiliation, that they were forced to leave their employment due to Defendant Black's conduct, and were, thus, constructively discharged, precluding any opportunity to protect their employment by pre-deprivation due process.

10

47.     Despite a reasonably diligent effort to secure employment comparable to her position with Defendants, each Plaintiff has been unable to do so and has lost the level of wages, benefits, and other compensation they had been earning as their employee.

48.     Defendant Black knew about, or absent reckless disregard would have known about, his and Defendant County's obligation under the First and Fourteenth Amendments to make employment decisions based on appropriate criteria for measuring performance, and was acting outside the scope of his official capacity as prosecutor and acting in an administrative capacity when executing such employment decisions.

49.     Defendants knew about, or absent reckless disregard, would have known about Plaintiffs' property and reputational interests in their classified civil service employment, and that they were entitled to pre-deprivation due process and procedural safeguards.

50.     Defendants knew about, or absent reckless disregard would have known about, expressions of opinion on matters of public concern and complaints of intimidation and hostile work environment and about other inappropriate actions by Defendant Black.

51.     At least a motivating factor in Defendants' decision to terminate Plaintiffs was their expressions of opinion on matters of public concern and complaints of intimidation and hostile work environment and about other inappropriate actions by Defendant Black.

52.     Defendant Black, by his intimidation and hostile acts causing fear, emotional distress and psychological harm in the minds of Plaintiffs, deprived Plaintiffs of their rights to preserve their employment with the intent to deter them from enforcing any rights they had to their employment.

53.     Plaintiffs are entitled to judgment under 42 U.S.C. Sec. 1983 in an amount be determined at trial.

**COUNT III**
**SEX DISCRIMINATION - TITLE VII, 42 USC 2000e-3(A) & (R.C. Sec. 4112.02)**

54.     Plaintiffs reallege the foregoing paragraphs as if fully rewritten herein.

55.     Plaintiffs Vanscyoc and Ricketts were subjected to a constant stream of unwelcome, unsolicited stream of demeaning, degrading, sexist, and offensive comments and conduct unwelcome offensive comments and unsolicited actions by Defendant Black throughout their employment on account of their gender.

56.     During the first several months of her employment Plaintiffs Vanscyoc and Ricketts attempted to ignore or overlook the aforementioned comments and conduct of their superior, Defendant Black.

57.     Both Plaintiff Vanscyoc and Ricketts served probationary periods during the initial period of their employment but privately observed that their work environment at the Prosecuting Attorney's office was similar to and characterized by co-workers and colleagues as a "frat house."

58.     During Plaintiffs' employment Defendant Black often did not come into the office or, on other occasions, he would briefly stop by in the morning and then go home to nap by his own admission.

59.     During Plaintiffs' employment Defendant Black provided no administrative oversight or guidance to assist Plaintiffs in processing incoming victim cases more efficiently.

60.     During Plaintiffs' employment Defendant Black directed them to address any issues to a number of supervisors, notwithstanding that most of Plaintiffs' issue dealt with Black's actions and behavior.

61. During Plaintiffs' employment Defendant Black's discriminatory behavior toward female staff—which constituted the majority of the office staff—had a significant, adverse impact on the morale of the office staff and the work environgment.

62. During Plaintiffs' employment Defendant Black attributed most problems and actions in the Prosecuting Attorney's office to the fact that employees, including Plaintiffs, were women, frequently referring to the office as a "henhouse."

63. During Plaintiffs' employment Defendant Black's female staff often commented on his mismanagement, how inappropriate he was toward women, including, but not limited to, female staff such as Cynthia Ellison, Chief Assistant Prosecutor, and Office Manager Christy Lowry, and the fact that his behavior created a hostile work environment.

64. During Plaintiffs' employment Defendant Black treated Ms. Ellison in an extremely rude, offensive and demeaning fashion, and berated her in front of Plaintiffs and other staff so harshly, that on several occasions his cruel, belittling tirades would cause her to cry.

65. During Plaintiffs' employment Assistant Prosecutor Lowry observed to them and other staff that described Defendant Black's behavior in contrast with other Prosecuting Attorneys for whom she had served, remarking how rude he was and noting how his behavior and attitude affected the entire office.

66. During Plaintiffs' employment Defendant Black frequently made explicit, offensive comments to Plaintiffs and other female staff about their physical appearances, how low cut their tops were, and how tight their clothing was, and bragged about sexual affairs he had or was having.

67.    During Plaintiffs' employment Defendant Black frequently referred to women in the most derogatory terms, even calling his then-fiance a "cunt"; he referred to Hocking County Commissioner Sandra Ogle, using this same term.

68.    During Plaintiffs' employment Defendant Black displayed extremely moody and belligerent behavior which had disturbing and frightening impact on all female staff, and on most days, would stomp around the office in front of staff and yell curses; on particularly extreme days, Black would also slam office doors and throw items.

69.    Defendant Black managed his office in an arbitrary, intimidating and abusive manner, and supervised Plaintiffs and other female employees in arrogant, dictatorial fashion, stating at one point, "It's my office, I'll run it the way I want."

70.    Defendant Black frequently screamed at Plaintiffs in the office and, sometimes, in the courtroom in a manner which belittled and demeaned them, subjecting both Vanscyoc and Ricketts as well as other female employees to extreme psychological distress, anxiety and outright fear.

71.    Defendant Black's torrent of abusive behavior toward Plaintiffs Vanscyoc and Ricketts and other female employees was discriminatory and so unrestrained, that Plaintiffs do not feel safe in their own Hocking County community.

72.    Defendant Black's conduct of constant, unpredictable outbursts toward Plaintiffs and other female employees was exacerbated by the common knowledge that he had a shotgun in his office, his admitted dangerous driving habit of unabashedly running red lights, and pulling a gun on a minor, which he bragged about to staff.

73.    In early 2022, Plaintiff Vanscyoc disclosed to Defendant Black that she was unexpectedly pregnant, to which, in response, he asked me if she wanted him to get a

14

coat hanger to terminate the pregnancy; additionally, Black joked about pushing her down the stairs to terminate her pregnancy.

74.     On February 3, 2022 Defendant Black told Plaintiff Vanscyoc that he will wear the cologne she likes since she will be next to him all day.

75.     Subsequent to the remark referenced above, in February 2022, Defendant Black commented to Plaintiff Vanscyoc that a co-worker, Justin, clearly wanted to sleep with her, but it was "obvious" she would not "go for his type."

76.     In February 2022, prior to Plaintiff Ricketts' employment as an Office Assistant for the Hocking County Prosecutor's Office, Defendant Black interviewed her for the position of Office Assistant, during which time he asked her if she was "alright with curse words," "specifically, the word fuck," and if she knew that "the pay was dog-shit".

77.     On or about March 2022, Plaintiff Vanscyoc suffered a miscarriage; upon relating this fact to Defendant Black, he replied that he was happy and celebrated the fact she had endured a miscarriage.

78.     In early 2022, Defendant Black stated to a prospective male candidate for the Felony Prosecutor's position, that the candidate should accept Black's offer of employment, because he has "young hot broads" working in his office, and he "could get more".

79.     On April 10, 2022 Defendant Black sent Plaintiff Vanscyoc text messages discussing stress relieving ideas, one of which was masturbating in public.

80.     On April 27, 2022 Defendant Black sent Plaintiff Vanscyoc text messages asserting that an elected official was not truly official until they had illicit activities in their office; at this time Defendant Black went on to discuss the couch in his office and "Only Fans".

81.     On May 4, 2022, Defendant Black told Plaintiff Vanscyoc that her mother was probably jealous when she saw how she (Vanscyoc) looked that day, and that he "would like to do stupid, impulsive things."

82.     On May 6, 2022, Defendant Black told Plaintiff Vanscyoc suggestively as she discussed how her truck was hit by another vehicle on the hitch that it sounded "hot".

83.     On June 14, 2022, Defendant Black sent Plaintiff Vanscyoc a rock song called "Pussy."

84.     On July 14, 2022, Defendant Black discloses he has a "bipolar 2 disorder" to Plaintiff Vanscyoc via text message; he goes on to state how important it is to be fully open with Cyndi Ellison and her, so, they can operate more smoothly as a unit. Plaintiff Vanscyoc agrees to work as closely as he wants, to which Black replies, "That sounds promising, again, careful what you ask for. Might get what you want." They go to lunch at Defendant Black's request, after which he sent a picture of himself shirtless to her. This will be the first of several such images that he sent to Plaintiff Vanscyoc and other female employees.

85.     On July 17, 2022, Defendant Black, along with his then-fiancee, took Ms. Davis and Plaintiffs out for dinner and drinks to celebrate Ms. Davis's birthday; at that time, Defendant Black was coercing Plaintiff Vanscyoc into engaging in sexual relations.

86.     On July 17, 2022, Defendant Black sent a shirtless image of himself to another female employee, Monica Davis, on her birthday.

87.     On July 18, 2022, Defendant Black sent a meme to Plaintiff Vanscyoc about "not getting laid."

88. During the month of July 2022 and in early August 2022, Defendant Black pressured Plaintiff Vanscyoc to engage in sexual relations with him, constantly texting her and urging her in person and via text messages to come to his house.

89. During the month of July 2022 and in early August 2022, Defendant Black instructed Plaintiff Vanscyoc to tell Ms. Ellison that she had an emergency with children so she could come to his house, and that he would approve the emergency leave request; he further instructed her not to tell Plaintiff Ricketts or Ms. Davis.

90. During the month of July 2022, August 2022 and throughout September 2022, Defendant Black pressured Plaintiff Vanscyoc to engage in sexual relations with him through multiple messages, entreaties and directives to come to his house, but she resisted and evaded him, explaining that she had work to do and had to care for her children.

91. During the month of July 2022, subsequent to a hearing in front of visiting Judge Dale Crawford, Defendant Black texted Plaintiff Vanscyoc a message, saying how "exceptional" she looked that day, and how it was the only thing he liked about Crawford.

92. On August 4, 2022, Defendant Black sent Plaintiff Vanscyoc a picture of himself shirtless; this was an electronic image Black sent frequently to Plaintiff Vanscyoc and other female employees of the Hocking County Prosecutor's Office.

93. On August 4, 2022, at the time described above, Defendant Black took Plaintiff Vanscyoc to lunch, and told her that he wished there was a nondisclosure agreement for her to sign but that he trusted her at that point. He further stated that they both need to relieve stress and that they can "be there for each other." He took Vanscyoc to his house, and after going upstairs, came downstairs and begins kissing her in his dining room.

94. On the evening of August 6, 2022, Defendant Black had Plaintiff Vanscyoc and co-worker Monica Davis over to his house, and smoked marijuana with them,

after which time, Plaintiff Vanscyoc and Ms. Davis left to go to a bar; after drinking for a few hours, Ms. Davis went home and Plaintiff Vanscyoc walked to her car, which was parked beyond Defendant Black's house.

95.     During the time described above Defendant Black sent multiple test messages to Plaintiff Vanscyoc, pressuring her to stop back at his house.

96.     On August 8, 2022, at the time described above, Defendant Black texted Plaintiff Vanscyoc referring to his office couch as his "porn couch."

97.      On August 8, 2022, Defendant Black joked to Plaintiffs Vanscyoc and Ricketts and co-worker Monica Davis that he wants to film them on his couch and film them in bikinis.

98.     On or about August 2022, Defendant Black moved a couch into his office, stating that he wanted female staff to carry the couch into his office while wearing bikinis.

99.     On or about August 2022 Defendant Black stated he was planning to use the couch as a "casting couch," insinuating that he was going to video record sexual activity on the couch.

100.    On August 11, 2022, Defendant Black asked Plaintiff Vanscyoc about "getting together."

101.    On August 12, 2022, Defendant Black suggests Plaintiff Vanscyoc "skip" work at the end of the day, to which she responds by making excuses why she cannot.

102.    On August 13, 2022, Defendant Black pays for Plaintiff Vanscyoc and her daughter getting their nails done, and states that he wished they had time to get together that afternoon.

103.     On August 17, 2022, Defendant Black discusses "getting together" for lunch with Plaintiff Vanscyoc, at which time she makes an excuse to not go and try for the end of the day.

104.     Susbsequently, on August 17, 2022, Defendant Black continued to urge Plaintiff Vanscyoc via more text messages to come to his house, which is nearby, stating (via text) sternly, "get your ass over here." Despite trying to make excuses, Plaintiff Vanscyoc felt pressured and intimidated, fearing retribution if she does not comply, and finally proceeded to Black's house.

105.     On August 17, 2022, Defendant Black directed Plaintiff Vanscyoc to leave work early to come to his house, in response to which, she took leave for the remainder of the week, saying she was sick, because she was uncomfortable by his constant advances and texts to her.

106.     During the time described above, Defendant Black used the power and influence of his position to induce Vanscyoc to engage in sexual relations with him.

107.     After being pressured, pursued and berated, Vanscyoc had sexual relations with Defendant Black on two occasions, the first of which was on an occasion when she was intoxicated and walking past his residence.

108.     Defendant Black took advantage of Plaintiff Vanscyoc's psychologically intimidated and anxious state to coerce her into sexual relations on the night of August 6, 2022, the occasion described above, and then, again, on August 17, 2022.

109.     On the two occasions when Defendant Black took advantage of Plaintiff Vanscyoc's psychologically intimidated and anxious state, using the inherent authority of his office, to coerce her into sexual relations described above, Vanscyoc did not consent to sexual relations with Defendant Black.

**19**

110.    Defendant Black possessed such power over Plaintiff Vanscyoc due to his position as her supervisor and appointing authority, and as the County's Prosecuting Attorney with the power to indict and charge persons with criminal offenses.

111.    Defendant Black freely told many others inside and outside the Prosecuting Attorney's Office of his sexual relations with Plaintiff Vanscyoc and shared the fact of his having sexual relations with her in an attempt to humiliate her, place her in a false light and damage her reputation.

112.    Subseqently, Plaintiff Vanscyoc declined to participate further in sexual relations with Defendant Black, who then began to retaliate against Plaintiff because of her refusal, ultimately, demoting her and then forcing her to resign from her job as a victim advocate.

113.    Plaintiff Vanscyoc was somewhat older than the other female employees in the Prosecuting Attorney's Office and felt a great deal of responsibility for their well-being.

114.    Plaintiff Vanscyoc was traumatized by Defendant Black's abusive, intimidating and terrifying behavior toward her, yet, determined that she would attempt to keep the other female employees safe from harassment and discrimination, and felt it her duty to assume the brunt of Black's discriminatory practices.

115.    Defendant Black's discriminatory practices as outlined above created a work environment which was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe to alter the conditions of the Plaintiffs' employment.  His conduct as described herein was not merely offensive but, in fact, sufficiently pervasive to create an objectively hostile or abusive work environment.

116.     On August 25, 2022, Defendant Black sent a text message to Plaintiff Vanscyoc, discussing his schedule for next day; she does not respond.

117.     On August 31, 2022, Defendant Black sent another shirtless image of himself to Plaintiff Vanscyoc.

118.     On September 1, 2022, Defendant Black talked to Plaintiff Vanscyoc in a raised, agitated voice, and threatened to discipline Assistant Prosecutor Melissa Bright, another female employee in the office.

119.     On September 2, 2022, Defendant Black told Plaintiff Vanscyoc he was going to fire Melissa on the following Tuesday.

120.     On September 6, 2022, Defendant Black states to Plaintiff Vanscyoc, "Speaking of inappropriate", and asks about her schedule, to which she initially made no response, and then, gave an excuse.

121.     Subsequently, on September 6, 2022, at the time referenced above, Defendant Black suggests Friday during lunch or Saturday to Plaintiff Vanscyoc to meet.

122.     On September 8, 2022, Defendant Black texts Plaintiff Vanscyoc stating that she should leave early or he will take her to lunch, to which she makes the excuse that Monica Davis and she will be setting up the fair booth.

123.     On September 11, 2022, in response to Defendant Black's repeated lunch "invitations", Plaintiff Vanscyoc attempted to avoid the lunch by stating that her phone was not working, to which Black replied, "That's too bad, Amanda (his fiancé) is going to be gone all day."

124.     On September 12, 2022, Defendant Black texted Plaintiff Vanscyoc stating he "like[d] that top you had on," and asked about her schedule, going on to comment that he, "…could have tackled [her] in your office, co-workers' presence be damned."

21

125. Subsequently, on September 12, 2022, at the time referenced above, Plaintiff Vanscyoc made another excuse why they cannot get together.

126. On September 15, 2022, Defendant Black viewed a picture of Monica Davis and Plaintiff Ricketts standing back-to-back holding campaign paraphernalia advocating election of Jessica Dicken for County Commissioner, at which time, he exclaimed, I'd vote for her [Dicken] based on that picture alone."

127. On November 15, 2022, after learning that Monica Davis was resigning, Defendant Black asked Plaintiff Vanscyoc to request Davis write a resignation letter that "…doesn't make [him] look like an asshole", and then told her that, "with all the stress we need to get together again."

128. On February 7, 2023, Defendant Black screams at Plaintiff Vanscyoc in a voice loud enough for other court personnel and attorneys to hear, causing Vanscyoc great emotional distress and others present to ask her, after Black stormed out of the courtroom, if she was okay; Vanscyoc returned to her office and reported the incident to Investigator Olen Martin and, subsequently, Chief Assistant Prosecutor Cynthia Ellison.

129. Subsequently, on February 7, 2023, at the time referenced above, Plaintiff Vanscyoc disclosed to Olen Martin that Defendant Black had had sexual relations with her as described above.

130. As set forth above, Plaintiffs were subjected to discrimination and harassment by Defendants and/or their agents.

131. Plaintiffs did not consent to or acquiesce in the aforementioned discrimination and harassment.

132. The unlawful discrimination against Plaintiffs was done on account of their sex and their exercise of protected statutory rights.

133.     Defendants Black, Hocking County and/or their agents were aware that the unlawful discrimination was occurring due to the open and notorious nature of the discrimination and did not take sufficient action to stop the harassment which Vansyoc and Ricketts and others complained of, or prevent future discrimination or retaliation.

134.     Because of the unwelcome and unlawful acts, Plaintiffs were forced to work in a hostile, abusive work environment which, because of its pervasiveness and severity, interfered with their ability to perform their duties, and resulted in great psychological trauma and lasting harm to their mental health.

135.     As a direct and proximate result of Defendants' actions as set forth above, Plaintiff Vanscyoc and Plaintiff Ricketts have suffered great financial loss, as well as emotional and reputational harm.

136.     The complaints by Plaintiffs to their superiors about Defendant Black's unlawful, discriminatory conduct were unsuccessful and ineffective in contesting such conduct and getting it to cease.

137.     Plaintiffs Vanscyoc and Ricketts have suffered adverse employment action and the following described harm:

(a)     Loss of wages;
(b)     Loss of pension benefits;
(c)     Loss of insurance benefits;
(d)     Loss of other fringe benefits;
(e)     Loss of the opportunity to be able to continue the gainful employ in which they have been engaged for the prior years;
(f)     Loss of future earnings and front-pay;
(g)     Loss of reputation;
(h)     Humiliation, embarrassment, and loss of self-esteem;
(i)     Adverse health effects; and
(j)     Unequal pay on the basis of their gender; and
(k)     Loss of time and money in endeavoring to protect themselves from Defendants' unlawful retaliation, including costs and reasonable attorneys' fees of this action.

138.     Plaintiffs Vanscyoc and Ricketts were treated less favorably than similarly situated employees of a different gender at all times material herein.

139.     Similarly situated male employees received lesser disciplinary action than Plaintiffs and other female employees for more egregious violations and received greater pay and/or compensation than Plaintiffs and other female employees for performing the same or similar job duties; in contrast to female staff, male employees were treated as professionals and equals by Defendant Black who neither attempted to demean or intimidate the latter.

140.     Plaintiffs Vanscyoc and Ricketts have exhausted their administrative remedies under 42 U.S.C. Sec. 2000e and R.C. Chapter 4112 by filing discrimination charges with the Ohio Civil Rights Commission and the U.S. Equal Employment Opportunity Commission and obtaining Notices of Right to Sue, copies of which are attached hereto.  See Exhibits A – D.

141.     Defendants' conduct violates 42 U.S.C. Sec. 2000e and Ohio Revised Code Sec. 4112.02(A), and Plaintiffs are entitled to judgment pursuant to 42 U.S.C. Sec. 2000e and Ohio Revised Code Chapter 4112.

**COUNT IV**
**RETALIATION UNDER 42 U.S.C. SEC. 2000E AND R.C. Sec. 4112.02(I)**

142.     Plaintiffs reallege the foregoing paragraphs as if fully rewritten herein.

143.     During their employment Plaintiffs reported and complained of the above-described discrimination and harassment, but no action was taken to correct and/or end such discrimination or harassment, and, subsequently, Plaintiffs were subjected to retaliation by Defendants and/or their agents.

144.    On several occasions during their employment Plaintiffs Vanscyoc and co-worker, Monica Davis, complained to superiors, Justin Townley, Felony Prosecutor, that Black's inappropriate comments and conduct made them extremely uncomfortable and, on several other occasions, Plaintiffs Vanscyoc and Ricketts as well as co-worker, Monica Davis, complained to Cynthia Ellison, Chief Assistant Prosecutor, about the shocking and discomforting nature of Defendant Black's inappropriate comments, harassment and actions and how they were so severe and pervasive that they created a hostile work environment.

145.    The unlawful retaliation against Plaintiffs was done on account of their sex and their exercise of protected statutory rights by their complaints about harassment and discrimination.

146.    Plaintiff Vanscyoc subsequently made a written report to Defendant Black complaining about his sexual harassment of her and others and other discriminatory acts he committed against her and other female employees on the basis of their gender.

147.    Plaintiffs Vanscyoc and Ricketts subsequently met with investigator Olen Martin and Chief Deputy Prosecutor Cynthia Ellison and reported Defendant Black's sexual harassment and other discriminatory acts he committed against them and other female employees on the basis of their gender.

148.    Under R.C. Sec. 42 U.S.C. Sec. 2000e and 4112.02, it is an unlawful employment practice for an employer to discriminate (i.e., retaliate) against its employees because they opposed an unlawful discriminatory practice.

149.    Under 42 U.S.C. Sec. 2000e and R.C. 4112.02(I), it is an unlawful employment practice for an employer to discriminate (i.e., retaliate) against its employees because they opposed an unlawful discriminatory practice.

150.    Plaintiffs Vanscyoc and Ricketts had a reasonable good-faith belief that

Defendants had discriminated against female employees on the basis of their gender, and complained about this unlawful practice.

151.     Plaintiffs Vanscyoc and Ricketts had a reasonable good-faith belief that they were being retaliated against by Defendant Black for their opposition to unlawful discriminatory practices.

152.     Plaintiffs Vanscyoc and Ricketts engaged in protected activity under R.C. Chapter 4112 by opposing discrimination (including sex discrimination in pay and terms and conditions of employment).

153.     The County was aware that Plaintiffs Vanscyoc and Ricketts were being discriminated against by Defendant Black and that Plaintiffs were engaged in protected activities.

154.     After Plaintiffs Vanscyoc and Ricketts engaged in protected activity, Defendant Black took subsequent employment action adverse to them by continuing his discrimination and constructively discharging them from their employment.

155.     Defendant Black discriminated against Plaintiff Vanscyoc, by suspending, demoting and constructively terminating her employment unlawfully without cause.  Such suspension, demotion and termination was also retaliatory conduct for her complaints about unwanted sexual harassment and discrimination, and her subsequent refusal to participate further in sexual relations with Defendant Black.

156.     The protected activity of Plaintiffs Vanscyoc and Ricketts as set forth above was the proximate cause of Defendant Black's adverse action.

157.     Defendant Hocking County was on notice and aware of discrimination and retaliation of Defendant Black against Plaintiffs Vanscyoc and Ricketts.

158.     Defendant Black lacked a legitimate, nondiscriminatory reason for the

adverse employment action taken against Plaintiffs Vanscyoc and Ricketts

159.     Defendant Black's assertion that Plaintiff Vanscyoc was placed on a mental health leave was a pretext for his discriminatory practices and retaliatory constructive discharge.

160.     Defendant Black's retaliatory conduct was ratified and/or acquiesced in by Defendant Hocking County.

161.     As a direct and proximate result of Defendants' unlawful conduct as set forth above, Plaintiffs suffered damages to include the loss of earnings, retirement benefits, and health insurance benefits.

162.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer economic damages for which Defendants are liable, including, but not limited to, pain and suffering, the loss of future earnings, benefits, and other terms, privileges, and reputational harm.

163.     Defendant Black's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter him and others from engaging in this type of unlawful conduct.

164.     Plaintiffs are entitled to judgment, plus compensatory and punitive damages in an amount to be determined at trial, and reasonable attorney's fees.

**COUNT V**
**DECLARATORY AND INJUNCTIVE RELIEF**

165.     Plaintiffs reallege the foregoing paragraphs as if fully rewritten herein.

166.     Plaintiffs have a strong likelihood of success on the merits of its claims, as there is no legitimate factual dispute that Defendant Black blatantly abused the power of his office, including, but not limited to, committing the discriminatory and retaliatory actions

set forth above and committed unethical practices, including, but not limited to, exploiting female employees and purposely failing to secure an indictment for an alleged rape victim because she was a felon, and breached his statutory and fiduciary obligation to faithfully discharge the duties of his office; Plaintiffs are entitled to a declaratory judgment that Defendants have violated 42 U.S.C. Sec. 2000e, R.C. Sec. 4112.02 by the actions set forth above.

167. Moreover, Defendant Black's course of conduct infringed, impaired and/or deprived Plaintiffs of their statutory right to administrative review and appeal to contest their constructive discharge and protect themselves from further intimidation and harassment.

168. Absent an injunction, Plaintiffs will continue to suffer, irreparable, financial, reputational, and psychological injury as described above if Defendant Black is not compelled to restore them to their employment, and refrain from further retaliatory and intimidating acts.

169. An injunction will not cause third parties to suffer any unjustifiable harm.

170. An injunction will serve the public interest; notably, an injunction will facilitate restoration of the reputational and employment interests and monies due Plaintiffs which were expended for representation and seeking redress in this action.

171. Plaintiffs have no adequate remedy at law to redress Defendant Black's conduct.

172. Therefore, Plaintiffs are entitled to declaratory and injunctive relief as follows:

> i. A declaratory judgment that Defendants have violated 29 U.S.C. Sec. 201, et seq., 42 U.S.C. Sec. 1983, 42 U.S.C. Sec. 2000e, R.C. Sec. 4111.03 and R.C. Sec.

4112.02 by the above-described actions against Plaintiffs; and

ii. An order enjoining Defendant Black from taking any retaliatory action against Plaintiffs in their person or property, and appointment of a special master to investigate Defendant Black's discriminatory and retaliatory practices toward Plaintiffs and other female employees of the Hocking Prosecuting Attorney's Office, and enjoining Defendant Black from liquidating and/or transferring any property or assets, real or personal.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Kate Ricketts and Kelsey Vanscyoc, pray for Judgment in their favor, back pay, front pay, punitive damages, pain and suffering, compensatory and non-economic damages in excess of $75,000, attorneys' fees, costs, pre- and post-judgment interest, and any other relief in law or equity to which Plaintiffs may be entitled.

Respectfully submitted,

*/s/ Michael A. Moses*
Michael A. Moses, Attorney
Moses Law Offices, L.L.C.
(#0025243)
136 W. Mound Street—Suite 100
Columbus, Ohio 43215-5020
Ph: (614) 224-7294
Fax: (614) 542-0230
Email-michaelmoses@moseslawllc.com

Counsel for Plaintiffs
Kate Ricketts and
Kelsey Vanscyoc

## **JURY DEMAND**

Plaintiffs, Kate Ricketts and Kelsey Vanscyoc, demand a jury trial to resolve all issues of fact related to their Complaint.

*/s/ Michael A. Moses*
Michael A. Moses (#0025243)


## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this pleading was served on Defendants, Ryan R. Black, 88 South Market St., Logan, Ohio 43138, and Hocking County, Ohio, One East Main Street, Logan, Ohio 43138, via Certified Mail, return receipt requested, and electronic mail, upon filing with the Court, this 20th day of February, 2024, at Columbus, Ohio.

*/s/ Michael A. Moses*
Michael A. Moses (#0025243)



EXHIBIT A

# OHIO CIVIL RIGHTS COMMISSION

### Governor Mike DeWine
Commissioners: Valerie A. Lemmie, Chair | Lori Barreras | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

| December 14th, 2023 | ***Mailed on December 14th, 2023 |

Kate Ricketts
21743 STATE ROUTE 180
LAURELVILLE, OH 43135
ricketts.katem@gmail.com

Hocking County Prosecuting Attorney
ATTN: HR
88 S. Market St.
Logan, OH 43138

## LETTER OF DETERMINATION

Kate Ricketts v. Hocking County Prosecutor
COL71(001695)09172023; 22A-2024-00516

**FINDINGS OF FACT:**
Charging Party filed a charge of discrimination with the Ohio Civil Rights Commission alleging Respondent engaged in an unlawful discriminatory practice. All jurisdictional requirements for filing a charge have been met. Prior to the conclusion of the investigation, Charging Party requested to withdraw the charge to request a Notice of Right to Sue from the Ohio Civil Rights Commission or Equal Employment Opportunity Commission.

**DECISION:**
The Ohio Civil Rights Commission has entered into its record a finding of **WITHDRAWAL OF CHARGE – REQUEST A NOTICE OF RIGHT TO SUE**. The matter is **CLOSED**.

Please refer to the enclosed **NOTICE OF RIGHT TO SUE** for additional information on Charging Party's suit rights.

**NOTICE OF RIGHT TO PETITION FOR JUDICIAL REVIEW:**
A determination of the Commission that constitutes a Final Order is subject to judicial review, wherein the court reviews the contents of this letter and determines if there are sufficient factual findings supporting why the Commission did not issue a complaint. A petition for judicial review must be filed in the proper common pleas court within **THIRTY (30) days** of the date the Commission mailed this Final Order. The right to obtain judicial review and the mode and procedure thereof is set forth in Ohio Revised Code § 4112.06.

The judicial review process is not a means to reexamine the investigation or further pursue your allegations through the Commission. You may consult with an attorney for information on available options.

A Probable Cause finding is not a Final Order and is not subject to judicial review by a court. All other determinations of the Commission constitute a Final Order and are subject to judicial review by a court.

Kate Ricketts v. Hocking County Prosecutor
COL71(001695)09172023; 22A-2024-00516
 Page 2


FOR THE COMMISSION

/s/ *Bai Benson*

Bai Benson, Columbus Regional Supervisor
Columbus Regional Office
P: 614-466-5928
E: bai.benson@civ.ohio.gov



cc:  <u>Representative for Charging Party</u>:        <u>Representative for Respondent</u>:
     Michael A. Moses, Esq.                          n/a
     Moses Law Office, LLC
     136 W. Mound St., Ste 100
     Columbus, OH 43215
     michaelmoses@moseslawllc.com

# OHIO CIVIL RIGHTS COMMISSION

**Board of Commissioners:**
Valerie A. Lemmie– Chair
Lori Barreras
William W. Patmon, III
Madhu Singh
Charlie Winburn



Angela Phelps-White,
Executive Director

---

| | | |
|---|---|---|
| **Charging Party,** | ) | |
| Kate Ricketts | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Charge No.** COL71(001695)09172023; |
| | ) | 22A-2024-00516 |
| **Respondent** | ) | |
| Hocking County Prosecutor | ) | |
| | ) | |
| | ) | |

---

## NOTICE OF RIGHT TO SUE

---

Pursuant to Ohio Revised Code 4112.051, you may file a civil action against the Respondent(s) alleging a violation of Ohio Revised Code 4112. The lawsuit may be filed in any State of Ohio court that has jurisdictions over the matter. Ohio Revised Code 4112.052 and 4112.14 provides that such a civil action must be filed within two years after the date of the alleged discriminatory practice. The time period to file a civil action is tolled during the pendency of the Commission investigation. You are advised to consult with an attorney to determine with accuracy the date by which a civil action must be filed. NOTE: If you request reconsideration of the Commission's determination**,** this NOTICE OF RIGHT TO SUE will be vacated. FOR FEDERAL COURT FILINGS: Notices of Right to Sue under federal law will be issued by the EEOC.

**FOR THE COMMISSION**

*/s/George Shaw*

_____

George Shaw
Columbus Regional Director
30 E. Broad St., 4th Floor
Columbus, OH 43215
(614) 466-5928

Date mailed:   December 14th, 2023

EXHIBIT B



# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine

Commissioners:  Valerie A. Lemmie, Chair | Lori Barreras | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

| December 14th, 2023 | ***Mailed on December 14th, 2023 |

Kelsey Vanscyoc                    Hocking County Prosecuting Attorney
29691 Blosser Rd.                  ATTN: HR
Logan, OH 43138                    88 S. Market St.
VANSCYOCKELSEY@GMAIL.COM           Logan, OH 43138

## LETTER OF DETERMINATION

Kelsey Vanscyoc v. Hocking County Prosecutor
COL71(001694)09172023; 22A-2024-00518

**FINDINGS OF FACT:**
Charging Party filed a charge of discrimination with the Ohio Civil Rights Commission alleging Respondent engaged in an unlawful discriminatory practice. All jurisdictional requirements for filing a charge have been met. Prior to the conclusion of the investigation, Charging Party requested to withdraw the charge to request a Notice of Right to Sue from the Ohio Civil Rights Commission or Equal Employment Opportunity Commission.

**DECISION:**
The Ohio Civil Rights Commission has entered into its record a finding of **WITHDRAWAL OF CHARGE – REQUEST A NOTICE OF RIGHT TO SUE**. The matter is **CLOSED**.

Please refer to the enclosed **NOTICE OF RIGHT TO SUE** for additional information on Charging Party's suit rights.

**NOTICE OF RIGHT TO PETITION FOR JUDICIAL REVIEW:**
A determination of the Commission that constitutes a Final Order is subject to judicial review, wherein the court reviews the contents of this letter and determines if there are sufficient factual findings supporting why the Commission did not issue a complaint. A petition for judicial review must be filed in the proper common pleas court within **THIRTY (30) days** of the date the Commission mailed this Final Order. The right to obtain judicial review and the mode and procedure thereof is set forth in Ohio Revised Code § 4112.06.

The judicial review process is not a means to reexamine the investigation or further pursue your allegations through the Commission. You may consult with an attorney for information on available options.

A Probable Cause finding is not a Final Order and is not subject to judicial review by a court. All other determinations of the Commission constitute a Final Order and are subject to judicial review by a court.

Kelsey Vanscyoc v. Hocking County Prosecutor
COL71(001694)09172023; 22A-2024-00518
 Page 2


FOR THE COMMISSION

/s/ *Bai Benson*

Bai Benson, Columbus Regional Supervisor
Columbus Regional Office
P: 614-466-5928
E: bai.benson@civ.ohio.gov



cc:     <u>Representative for Charging Party</u>:          <u>Representative for Respondent</u>:
        Michael A. Moses, Esq.                          n/a
        Moses Law Office, LLC
        136 W. Mound St., Ste 100
        Columbus, OH 43215
        michaelmoses@moseslawllc.com

# OHIO CIVIL RIGHTS COMMISSION

**Board of Commissioners:**
Valerie A. Lemmie– Chair
Lori Barreras
William W. Patmon, III
Madhu Singh
Charlie Winburn



Angela Phelps-White,
Executive Director

| | | |
|---|---|---|
| **Charging Party,** | ) | |
| Kelsey Vanscyoc | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Charge No.** COL71(001694)09172023; |
| | ) | 22A-2024-00518 |
| **Respondent** | ) | |
| Hocking County Prosecutor | ) | |
| | ) | |
| | ) | |

---

## NOTICE OF RIGHT TO SUE

---

Pursuant to Ohio Revised Code 4112.051, you may file a civil action against the Respondent(s) alleging a violation of Ohio Revised Code 4112. The lawsuit may be filed in any State of Ohio court that has jurisdictions over the matter. Ohio Revised Code 4112.052 and 4112.14 provides that such a civil action must be filed within two years after the date of the alleged discriminatory practice. The time period to file a civil action is tolled during the pendency of the Commission investigation. You are advised to consult with an attorney to determine with accuracy the date by which a civil action must be filed. NOTE: If you request reconsideration of the Commission's determination**,** this NOTICE OF RIGHT TO SUE will be vacated. FOR FEDERAL COURT FILINGS: Notices of Right to Sue under federal law will be issued by the EEOC.

**FOR THE COMMISSION**

*/s/George Shaw*

George Shaw
Columbus Regional Director
30 E. Broad St., 4th Floor
Columbus, OH 43215
(614) 466-5928

Date mailed:   December 14th, 2023

EXHIBIT C



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

February 13, 2024

Ms. Kate M. Ricketts
c/o Michael A. Moses, Esquire
Moses Law Office
136 West Mound Street
Suite 100
Columbus, OH  43215

Re:  EEOC Charge Against Hocking County Prosecutor's Office, et al.
   No. 22A202400516

Dear Ms. Ricketts:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Indianapolis District Office, Indianapolis, IN.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                    Sincerely,

                    Kristen Clarke
                Assistant Attorney General
                  Civil Rights Division

        by      /s/ Karen L. Ferguson
                  Karen L. Ferguson
            Supervisory Civil Rights Analyst
            Employment Litigation Section

cc: Indianapolis District Office, EEOC
  Hocking County Prosecutor's Office, et al.



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

February 13, 2024

Ms. Kelsey Vanscyoc
c/o Michael A. Moses, Esquire
Moses Law Offices
136 West Mount Street
Suite 100
Columbus, OH  43215

Re:  EEOC Charge Against Hocking County Prosecutor's Office, et al.
    No. 22A202400518

Dear Ms. Vanscyoc:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Indianapolis District Office, Indianapolis, IN.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by        /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Indianapolis District Office, EEOC
  Hocking County Prosecutor's Office, et al.